UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOSEPH A. KOEHN,

              Defendant.

**DECISION AND ORDER**
10-CR-264S

## I. INTRODUCTION

Presently before this Court is Defendant Joseph A. Koehn's Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Koehn's motion is denied.

## II. BACKGROUND

On April 3, 2012, Koehn pleaded guilty to (1) attempted production of child pornography, in violation of 18 U.S.C. § 2251 (a), and (2) possession of child pornography, in violation of 18 U.S.C. § 2252A (a)(5)(B). (Docket Nos. 85, 86.) The attempted production charge stemmed from Koehn's efforts to obtain sexually explicit photographs of a 4-year-old girl, whom he later attempted to meet for purposes of making a child-pornography video of him having sex with her. (Plea Agreement, Docket No. 85, ¶ 6; Presentence Investigation Report, ¶¶ 19-26, 34, 36.) The possession charge stemmed from Koehn's admitted possession of more than 600 images of child pornography, some depicting prepubescent children less than 12 years old portrayed in sadistic, masochistic, or violent conduct. (Plea Agreement, ¶ 6; Presentence Report, ¶¶ 37-41.) These convictions followed Koehn's 2004 conviction in state court for attempted sexual misconduct, the underlying facts of which involved him having sex with a 16-year-

1

old girl.  (Presentence Report, ¶ 81.)

On October 15, 2013, this Court sentenced Koehn to 240 months' imprisonment on the production count and 120 months on the possession count, to run concurrently, as well as 10 years' supervised release, a $200 special assessment, and no fine, fees, or costs.  (Docket Nos. 103, 105.)  Koehn is presently serving his sentence at FCI Petersburg Low, with a release date of September 24, 2026.[1]

On April 27, 2020, Koehn filed a motion for compassionate release to home confinement or for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A)(i) on the ground that he is at heighted risk to develop COVID-19 due to his medical conditions.[2]  (Docket Nos. 143, 145, 147, 155.)  The government opposes the motion. (Docket No. 149.)

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[3] provides as follows:

> The court may not modify a term of imprisonment once it has

---

[1] See https://www.bop.gov/inmateloc/ (last visited July 28, 2020).

[2] Koehn initially moved on April 27, 2020.  (Docket No. 143.)  He supplemented his motion on May 13, 2020, and filed an amended motion on June 2, 2020.  (Docket Nos. 145, 147.)  He filed his reply to the government's response on July 27, 2020.  (Docket No. 155.)

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

2

> been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v.

3

Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [4] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i). See 28 U.S.C. § 994 (t). The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines. The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons". See U.S.S.G. §

---

[4] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel. Id. § 542.15 (a). A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples. The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[5] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the

---

[5] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A). See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited July 28, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the

5

applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 2020 WL 1307108, at *2.

**B.    Koehn's Motion for Compassionate Release**

**1.  Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement. To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf,

---

"Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction. See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory-exhaustion requirement is mandatory and cannot be excused. See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); see also United States v. Montanez, 15-CR-122G, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, Koehn attests that he twice submitted requests for compassionate release to the warden of FCI Petersburg Low. (Declaration of Joseph Koehn ("Koehn Decl."), Docket No. 147, p. 12.)  His first request was returned to him because it was unsigned; his second request was returned because it was allegedly not made on the proper form. (Id.)  The government acknowledges that Koehn submitted his first request, but denies receipt of any subsequent requests. (Memorandum of Law, Docket No. 149, p. 7.)

Koehn has submitted a copy of his second request, dated April 29, 2020. (Koehn Decl. pp. 17-19.)  That request contains a notation, dated May 5, 2020, instructing Koehn to "use attached forms" and appears to be signed by a prison official. (Id.)  It thus appears that Koehn submitted his request as alleged, but it was returned to him, which may explain why the facility has no record of it.  In any event, the government has submitted no authority requiring that an inmate's administrative request for compassionate release be contained on a certain form, and in fact, it concedes that requests in any format are accepted at FCI Petersburg Low. (Memorandum of Law, Docket No. 149, p. 7.)

Accordingly, this Court will deem Koehn's April 29, 2020 submission a valid administrative request for compassionate release made to the warden of FCI Petersburg Low. Thirty days having lapsed since April 29, 2020, this Court finds that Koehn has satisfied the statutory-exhaustion requirement.

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Koehn has served approximately 131 months of his 240-month sentence. He is a 37-year-old man who claims to have underlying medical conditions that make him highly susceptible to COVID-19, consisting of hypertension, hemoglobinopathy, inflammatory bowel disease, Hepatitis B, and unspecified kidney problems. (Motion for Compassionate Release, Docket No. 142, p. 3; Amended Motion, Docket No. 147, pp. 4, 6: Reply Memorandum, Docket No. 155, pp. 2, 10.) If granted compassionate release, Koehn plans to live with the mother of his children in Buffalo, N.Y., and work for a landscaping company owned by a family friend. (Motion for Compassionate Release, p. 4; Amended Motion, p. 11.)

The most recent medical records Koehn submitted are from October 2019. (Amended Motion, pp. 24-26, 29; Reply Memorandum, p. 34.) At that time, Koehn's "current" relevant diagnoses included benign hypertension and obesity. (Amended Motion, pp. 24, 29.) His blood pressure readings were listed as 165/98 on October 15, 2019, and 143/93 and 181/99 on July 2, 2019. (Reply Memorandum, p. 34.) Medical staff prescribed Koehn medication to treat his hypertension and advised him to follow a better diet and increase his exercise to reduce his obesity. Id. Koehn's "resolved" diagnoses at that time included irritable bowel syndrome. (Amended Motion, p. 26.)

Koehn also submitted results of laboratory testing. Results from a blood panel run

8

in June 2020 appear to reveal normal kidney function, normal hemoglobin testing, and abnormal hepatitis reaction.  (Reply Memorandum, pp. 35-36.)  Results from a panel run in October 2018 revealed high counts of hemoglobin and hematocrit, as did undated results from FMC Rochester.  (Amended Motion, p. 27; Motion for Compassionate Release, p. 6.)  Results from a panel run in November 2017 revealed "out of range" findings for inflammatory bowel disease.  (Motion for Compassionate Release, p. 5.)

At the time of his presentence interview in April 2012, Koehn reported that he was in good physical health, with no history of significant illness or injury, though he advised that he was placed on medication to lower his cholesterol and blood pressure once he was incarcerated.  (Presentence Report, ¶¶ 51, 105.)

It appears from the submitted records that Koehn's current medical issues involve hypertension and obesity.  There is no evidence that he has been diagnosed with hemoglobinopathy or any liver or kidney conditions.  Rather, it appears that Koehn has self-diagnosed by extrapolating from high or abnormal laboratory results.  Other conditions, such as irritable bowel syndrome and high levels of hemoglobin and hematocrit, appear to have resolved.

Having thoroughly reviewed the record, this Court finds that none of Koehn's medical conditions constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13.  None of the conditions are a terminal illness (i.e., a serious and advanced illness with an end of life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor are any a serious condition, impairment, or age-related deterioration that substantially diminishes Koehn's ability to provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii).  See United States v. Korn,

15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Koehn maintains that his medical conditions make him at high risk for serious illness from COVID-19. He is correct.

COVID-19 is the sweeping, potentially deadly, worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020. The Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[6] See Jones v. Wolf, No. 20-CV-361, 2020 WL 1643857, at *8 (W.D.N.Y. Apr. 2, 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 20 Civ. 2518 (AT), 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020)). Those medical conditions consist of cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state, obesity (body mass index of 30 or higher), serious heart conditions, sickle cell disease, and Type 2 diabetes melitus.[7] The CDC has also identified medical conditions that *might* make an individual at increased risk for severe illness from COVID-19, including hypertension.[8]

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 28, 2020).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 28, 2020).

[8] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last

10

Koehn is therefore correct.  At 5' 7" and 218 pounds, with a body mass index of 34.1[9] and persistent hypertension, Koehn falls into the high-risk category.  (Presentence Report, p. 2, Reply Memorandum, p. 34.)

Some courts have found that inclusion in the high-risk category alone is enough to warrant a sentence reduction, see, e.g., United States v. Zukerman, 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases), but this Court has not.  Rather, it has found, and continues to find, that the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.  See United States v. Stevens, 04-CR-222S, 2020 WL 2393306, at *6 (W.D.N.Y. May 12, 2020); Korn, 2020 WL 1808213, at *6; see also United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gagne, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19

---

visited July 28, 2020).

[9] https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited July 29, 2020).

11

do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 2020 WL 1307108, at *4 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[10] This plan is based on guidance and directives from the World Health Organization, the CDC, and other related agencies. Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings, employed screening procedures, and suspended visitation and tours.[11]

These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population. And these measures appear to have proven effective at FCI Petersburg Low: there have been no

---

[10] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited July 28, 2020).

[11] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 28, 2020).

12

inmate cases and only 1 staff case (now recovered) as of this writing.[12]

Thus, although Koehn has demonstrated that he falls in the high-risk group, he nonetheless alleges nothing more than the general possibility that he could contract COVID-19, and he has made no showing that FCI Petersburg Low's plan and efforts to combat the disease are inadequate or that the facility is unable to adequately treat him if he falls ill.  To the contrary, it appears that the BOP's efforts at FCI Petersburg Low are working.  Thus, this Court finds that Koehn fails to demonstrate an extraordinary and compelling reason for a sentence reduction based on COVID-19.  See Stevens, 2020 WL 2393306, at *6-7 (denying compassionate release to defendant in facility with no reported cases alleging only the general possibility of contracting COVID-19); Korn, 2020 WL 1808213, at *6-8 (denying compassionate release to defendant who failed to show inadequacy in Bureau of Prisons plan or ability to treat him); see also Gileno, 2020 WL 1307108, at *4; Eberhart, 2020 WL 1450745, at *2; Zywotko, 2020 WL 1492900, at *2; Gagne, 2020 WL 1640152, at *4.

### 3. Consideration of the § 3553 (a) Factors

Even if Koehn had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are outweighed by consideration of the § 3553 (a) factors and that Koehn's original sentence would be severely undermined by a sentence reduction.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 2020 WL 91399, at *7.   The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to

---

[12] https://www.bop.gov/coronavirus/ (last visited July 29, 2020).

reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a).

As this Court recognized at sentencing, Koehn engaged in exceptionally egregious conduct. (Sentencing Transcript, Docket No. 114, p. 13.) He trolled the internet looking for minors; he repeatedly pursued an individual who had access to a 4-year-old girl; he planned, in extraordinary detail, exactly what sex acts he would perform on the 4-year-old, how he would drug her, and what he would do if she was injured or cried; and he nearly secured access to the 4-year-old for these purposes, thwarted only by the individual's cooperation with law enforcement. (Presentence Report, ¶¶ 17-26.) In addition, Koehn separately possessed more than 600 images of child pornography, some depicting prepubescent children less than 12 years old portrayed in sadistic, masochistic, or violent conduct. (Id. ¶¶ 37-41.)

For this aggravated criminal activity, this Court imposed a 240-month sentence, which was 84 months below the lowest sentence in the recommended guideline range of 324-405 months. This is a fair, just, and reasonable sentence which, in this Court's view, would be severely undermined by a reduction to time served. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction would also result in unwarranted sentencing disparities. Id. Accordingly, consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, even if Koehn had demonstrated extraordinary and compelling reasons for a sentence reduction that are not outweighed by consideration of the § 3553 (a) factors (which he has not), this Court would find that a sentence reduction is not consistent with U.S.S.G. § 1B1.13. See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2).  This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

Koehn has a history of predatory behavior.  When he was 20 years old, Koehn engaged in oral and vaginal sex with a 16-year-old girl and tried to also get the girl's 13-year-old sister similarly involved.  (Presentence Report, ¶ 81.)  Four years later, Koehn tried to pay for access to a minor female for purposes of producing a movie depicting sexually explicit conduct between an adult male and the minor female.  (Id. ¶¶ 17-18.) Two years after that, Koehn engaged in the conduct listed above: attempting to secure sexually explicit photographs of a 4-year-old girl and offering to pay for access to the girl for purposes of engaging in sex acts on film with her.  (Id. ¶¶ 19-26.)  At that same time, Koehn was also communicating with and attempting to meet two 13-year-old girls, from whom he also solicited and received nude photographs.  (Id. ¶¶ 42-47.)  Koehn offered to pay the two girls to make a sex tape with him, and he disturbingly requested that one of the girls bring her 1-year-old niece with her for the same purpose.  (Id. ¶ 46.)

Given the manipulative and predatory nature of Koehn's criminal conduct and his history of sexual misconduct with minors, this Court finds that he remains a danger to the community if released.  A sentence reduction is therefore precluded on this basis as well.

See <u>United States v. Roney</u>, 10-CR-130S, 2020 WL 2846946, at *7-8 (W.D.N.Y. June 2, 2020) (denying compassionate release to child pornography defendant due, in part, to the defendant's history of sexually abusing minors); <u>United States v. Schultz</u>, 17-CR-193S, 2020 WL 2764193, at *8 (W.D.N.Y. Mary 28, 2020) (denying compassionate release to child pornography defendant due, in part, to "the manipulative and predatory nature of Schultz's criminal conduct and his history of sexual misconduct"); <u>United States v. Lebrecht</u>, 1:16-CR-166 EAW, 2020 WL 2519721, at *3 (W.D.N.Y. May 18, 2020) (denying compassionate release to child pornography defendant due, in part, to the danger the defendant poses to the community as demonstrated by his on-line chats and other underlying offense conduct).

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that compassionate release under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Koehn's motion will therefore be denied.

## V. ORDER

IT HEREBY IS ORDERED, that Koehn's Motion for Compassionate Release and Amended Motion for Compassionate Release (Docket Nos. 143, 147) are DENIED.

SO ORDERED.

Dated:   July 30, 2020
         Buffalo, New York

                                                s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge